Complainants are Auto Bus Operators Local Union 461 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, and two members of the local. Defendants are Joint Council No. 18 of the International Brotherhood and "Joint Council No. 18 Special Local," and three members of the joint council. The case is before the court on an order that defendants show cause why they should not be restrained from interfering with the affairs of Local 461 and from interfering with the employment of the individual complainants. A few months ago a similar order to show cause in this suit was discharged because of laches, absence of necessary parties, and because the equity of complainants was denied by the defendants. Since then, an amended bill has been filed and new affidavits presented on both sides.
Local 461 is an unincorporated association having now or recently eight hundred members. No statute permits such an association to sue or be sued in its common name in this court. But there are a large number of equity decisions in *Page 101 
which an unincorporated trade union by name has been made a defendant and these precedents establish that such a course is proper. In one of them, Mayer v. Journeymen Stonecutters'Association, 47 N.J. Eq. 519, Vice-Chancellor Green mentionedP.L. 1885 p. 26, as authority for a suit against a voluntary association. But this statute, now found in Comp. Stat. p.4064, was a supplement to "An act to regulate the practice of courts of law" and did not apply to suits in chancery.International Hod Carriers, c., Local No. 426, v.International Hod Carriers, c., Local No. 502, 101 N.J. Eq. 474,
was a case in which both complainant and defendant were unincorporated labor unions. Defendant objected that complainant had no power to bring suit in its own name, but Vice-Chancellor Church did not pass on the objection. In Great Council, c., ofRed Men v. Mohican Tribe, No. 64, c., 92 N.J. Eq. 593, relief was granted a voluntary association upon its counter-claim. If a trade union may be sued by name, it may counter-claim, and I see not why it may not prosecute an original bill in the same convenient style. Obviously, all the members cannot join as complainants. Suit in the name of the association involves the fiction of imputing to it unity and personality but it is a convenient fiction and can lead to no inequity so long as we bear in mind that it is a fiction. I hold that the members of an unincorporated trade union may enforce their joint rights in equity by suit brought in the name of the union.
When the bill in this cause was first filed, the sole complainants were two members of the union. They asserted that they sued in behalf of the entire membership to enforce rights belonging to all; but they did not claim that authority to bring suit had been delegated to them by the union. The only defendants were two non-members who allegedly had usurped control of the union. I was of the opinion, as I still am, that the dispute could not be decided unless the officers or other authorized representatives of the union or else the entire membership by their common name, be joined. The rule is that all substantial interests must be represented; there must be sufficient parties to insure a full presentation *Page 102 
of the case. Story Eq. Pl. § 107, c. Accordingly, in the amended bill, the union appears as a co-complainant. The practice of making a corporation a party to a suit brought by a stockholder in a representative capacity may well be followed, even though not compulsory, in similar cases involving large voluntary associations.
The bill has two purposes: to enforce rights common to all members of Local 461, and to protect the personal rights of the individual complainants. The allegations relative to the grievance of the local union may be summarized as follows: The local, by reason of contracts with taxicab and auto bus operators, did control and still does control the filling of over eight hundred positions for taxicab and bus chauffeurs within Hudson county. This number includes all the taxicab chauffeurs and ninety-five per cent. of the bus chauffeurs employed in the county. None of these positions are available except to members in good standing of the local.
Joint Council No. 18 is composed of the seven executives of Local 461 and of each of five other locals of the International Brotherhood functioning in Hudson county. The powers of the council are set forth in the constitution and by-laws of the Brotherhood, namely, "to adjust all questions of jurisdiction between local unions, subject to the approval of the general executive board, to try cases against local unions, cases appealed from local unions and to try individual cases which local unions refuse or neglect to try."
In April, 1931, trouble arose within Local 461 regarding the funds of the local. The joint council appointed a committee to investigate. The committee reported back to the council a recommendation that a receiver of the local be appointed, or that its charter be revoked, or that action be taken to eliminate the officers of the union. This report was approved by the council and by the president of the International Brotherhood. On July 21st, 1931, a meeting of the local was held under the direction of the president of the council for the purpose of electing officers of the local. (This seems to indicate that the council had decided to eliminate the then officers of the local, rather than follow the other *Page 103 
recommendations, that a receiver be appointed, or the charter revoked.) No officers were elected at the meeting but the meeting adjourned without taking action. On August 10th, 1931, the defendants Geier, Allen and Galli, who were delegates to the council from truckmen's or teamsters' locals, were appointed by the council business managers of the local and took possession of all its books, records, c., and have since collected from the members of the local their dues, and have entered into contracts with employers governing the employment of the members of the local, and in fact have been doing all those things for the conduct of the affairs of the local which properly belong to the local and its members.
The day last mentioned, August 10th, a committee from Local 461 waited on the joint council and sought information as to the authority of Geier, Allen and Galli to assume control of the local and were informed that these three were in power for six months, and that toward the end of August or in September, a meeting of the local would be held to elect officers; but no such meeting was held. Since that time, members of the local have on several occasions attempted to appear before the joint council but have been refused admittance. Last winter, about three hundred members of the local sent a petition to the general executive board of the Brotherhood complaining of the situation in the local. This petition was sent in time to be considered by the executive board at their meeting to be held in February, 1932, at Miami, Florida. No reply was received except a statement published in the official magazine of the Brotherhood in April, 1932:
"It was further decided that the petition sent in containing several names written in pencil, some of which did not look authentic, said petition calling for an election of officers and that the handling of the affairs of the local be turned over to the membership, the time was not appropriate for such action. Consequently the board decided to refuse request of the petition."
The next step in the controversy was the filing of the bill of complaint in this cause August 18th, 1932. Later, on October 18th, 1932, the members of the local attempted to *Page 104 
hold a meeting and for that purpose notices were posted. Mr. Geier tore down the notices and threatened any members of the local with loss of occupation should they attend the meeting, and at the hour and place appointed he was present and wrote down the names of all who came to attend, with the result that many members of the local, when they saw him, did not dare enter the meeting. Thereafter, a number of those who did attend and whose names were taken by the defendant were summoned to appear before the grievance committee.
Some time after July, 1931, the joint council attempted to create a new local union allegedly to supersede the complainant local. This new local the defendants designate as "Joint Council No. 18, Special Local." Knowledge of the existence of this special local was withheld from the members of complainant Local 461 until this litigation was started and it was only through the affidavits filed by the defendants on the first order to show cause that the existence of the alleged special local became known.
The allegations of the bill above recited are verified by oath. Defendants say that Local 461 has not functioned since the meeting of July 21st, 1931; that on August 10th, 1931, the special local was formed under instructions from the International Brotherhood; that all the members of Local 461 were considered as members thereof; and that practically all of them did affiliate themselves with the special local, which has been functioning since that day and has been recognized by the International Brotherhood; that defendants have never interfered with or conducted any matters on behalf of Local 461, although they took possession of certain of its records and paraphernalia; they are acting as "business conductors" of the special local. The defendants deny interfering in any way with the meeting of the complainant local held in October of this year.
The constitution and by-laws of the International Brotherhood constitute a contract between the members of Local 461 intersese, and between them and the general body of membership of the Brotherhood, and between the local and the joint *Page 105 
council and other agencies of the Brotherhood. The members of the local may all, of right, insist that their affairs be managed in the manner therein prescribed. The by-laws require that the business of a local be conducted by its officers, elected by its members for a fixed term. The joint council has no authority to supersede the local officers and to take over control of the local. True, the by-laws prescribe for suspension or removal of local officers and even for the suspension or dissolution of the local union. But no action, under color of these provisions of the by-laws has been attempted. Clearly the defendants, if they have assumed the management of complainant local as charged, have infringed the rights of complainants. These rights, founded in contract, complainants may enforce against defendants since they are likewise bound by the same contract.
But defendants say that Local 461 has "ceased to function." It has not, however, been suspended or its charter revoked. The by-laws provide: "No local union can dissolve while there are seven dissenting members." If, indeed, Local 461 has ceased to function, it may resume, without undue interference from defendants, the activities for which it was organized. As a corollary to the assertion that Local 461 has ceased to function, defendants deny that they have ever interfered with it and say that it is a new local whose business they are conducting. But note, they do not deny that they took possession of its records, or that a committee of Local 461 were told by the council that the individual defendants were in power for only six months, or that last spring the general executive board recognized Local 461, and found the time not ripe for returning to the local the management of its affairs. The uncontradicted circumstances refute the formal denial of the defendants.
I am satisfied that defendants are interfering with the management of complainant local and should be restrainedpendente lite from continuing to do so. Whether Local 461 now has an organization — officers ready to take charge of its affairs — I am uncertain. If it has not, and if the by-laws do not provide for their election at this time, an election *Page 106 
can be held under the direction of the court. Great Council,c., Red Men v. Mohican Tribe No. 64, c., supra. Better still, if the general executive board of the Brotherhood can be moved to arrange and supervise the election.
Defendants urge the rule that in controversies between a member and the union, remedies within the organization must be exhausted before appeal to the courts of the state. That is the rule generally applicable to voluntary associations and in this state it was developed in cases relating to mutual benefit societies.State, Zeliff v. Grand Lodge, c., Knights of Pythias,53 N.J. Law 536. The exact and prompt solution of such disputes are of small importance either to the state or to the litigants compared to the major controversies that sometimes develop within trade unions.
The right management of union affairs is of great public importance. The transportation utilities — railroads, street railways, buses, taxicabs, trucks — in the populous regions of the state are all unionized, as are the building trades and many of our leading industries. Upon the wisdom and honesty of the leadership of our trade unions depend in large measure the prosperity of New Jersey. The proper management of the unions is of even greater moment to their members. A stockholder of a corporation, if dissatisfied with its management, can sell his stock and invest elsewhere; a member of a union can resign — and starve. Of course, this is an exaggeration. But consider the situation of the individual complainants in the present suit. They have lived with their families in Jersey City for most of their lives; they have earned their living as chauffeurs for twelve and seventeen years, respectively, during recent years as auto bus chauffeurs. The trade union to which they belong controls, as is alleged, ninety-five per cent. of the bus operators' and other chauffeurs' positions within Hudson county. If complainants resign from the union, they will have to learn a new trade, or leave their established homes to seek employment in some locality where the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America is not entrenched. The court is loath, in such cases, to let any obstacle interfere with granting equitable relief. *Page 107 
The subject of remedies within the union is most ably discussed by Vice-Chancellor Berry in Walsche v. Sherlock, 110 N.J. Eq. 223.
I summarize some of his conclusions: The by-laws of a voluntary association constitute a contract, by which a member is bound. If the by-laws create a tribunal within the organization which has jurisdiction of the controversy, then if the question is a social one, the member must first seek relief in that tribunal. But if the question involves property rights, he need not exhaust his remedies within the organization unless he has agreed to do so. As every citizen has the common right to have his property protected by the courts of the state, a contract whereby he foregoes or postpones that right must be strictly construed. Again, even if the member has agreed to resort to the tribunals of the union before entering the courts of the state, he will not be required to do so if it appears that his remedy within the organization is unsubstantial.
Vice-Chancellor Berry enumerated several factors which relieved Walsche and his associates from the necessity of seeking relief from the union tribunals: The great number of successive appeals, tending to exhaust complainants, before complainants could exhaust the remedies. The remoteness, or uncertainty, of the time and place for the sitting of the union tribunals. Refusal of a tribunal to receive the complaint or failure to act thereon. Prejudice on the part of the judges.
In the instant case, defendants do not point out distinctly, and my own reading of the by-laws does not disclose to me, what complainants should do within the Brotherhood to obtain relief. They have already petitioned the general executive board of the Brotherhood, and their petition has been rejected, without a hearing, on grounds of expediency. Seemingly, they may appeal to the general convention, a body that meets once in five years. But I am not informed where or when the next convention will be held. Complainants are excused from prosecuting such an appeal.
Objection to relief is made on the ground that the purpose of the union is to monopolize the supply of labor employed *Page 108 
in operating taxicabs and buses in Hudson county, contrary to public policy. I am of the opinion that the objection is not sound. It is by no means clear that such a monopoly is contrary to the policy of the state. For many years we have witnessed the growth of trade unions, narrowing the opportunity of employment for those who are not members of a union. Whenever a trade union becomes powerful enough, its members refuse to work with non-members; it contracts with employers and with associations of employers that only union men will be employed. The purpose and the result is monopoly. This process has been notorious; it has been patent to the legislature, and they have taken no steps to check it. On the contrary, well knowing that a strike is the usual weapon employed to secure and enforce such a monopoly, they have enacted laws in aid of the right to strike. P.L. 1883 p.36; Comp. Stat. p. 3051; P.L. 1926 p. 348. Likewise, the legislature has forbidden corporations to require its employes to refrain from joining trade unions. P.L. 1894 p. 327; Comp. Stat.p. 3052. I think the policy of New Jersey approves of the organization of employes in trade unions which are governed on democratic principles and membership in which is open, on reasonable and equal terms, to all persons of good character and of skill in the trade; that the monopolistic tendencies or purposes or contracts of such unions are not contrary to the policy of the state. But even if I am wrong in this, it does not follow that complainants must be denied relief. They are not suing on a contract with employers giving to the union a labor monopoly, or otherwise suing to enforce their monopoly. They allege rights independent of such a monopoly and which are not tainted by its alleged illegality and which therefore cannot be defeated on this ground. Brennan v. United Hatters of NorthAmerica, 73 N.J. Law 729.
I will advise an order restraining defendants from interfering with complainant local. The form of order may be settled at chambers on two days' notice. At the same time I will hear counsel as to the necessity and method of having an election of officers. *Page 109 
The motion for restraint against interfering with the individual complainants in their efforts to obtain employment must be denied for the reasons stated on the former motion. The affidavits now before me present nothing new on this branch of the case.