FIDELITY AND DEPOSIT COMPANY OF MARYLAND, complainant,

*v.*

BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, a corporation of Indiana, defendant-appellant, and BROTHERHOOD OF PAINTERS, DECORATORS AND PAPERHANGERS OF AMERICA, LOCAL 213 (a corporation of New Jersey), defendant-respondent.

[Submitted October 25th, 1935. Decided May 14th, 1936.]

*Mr. Charles C. Stalter,* for the appellant.

*Mr. Henry Marelli,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

This is an interpleader suit. The stakeholder was the complainant, Fidelity and Deposit Company of Maryland, which paid the disputed fund into court, and was thereupon discharged from participation in the case.

The dispute is between the Indiana corporation, which for convenience will be called "General" and the Local No. 213, which will be designated herein as "Local." The two defendants, appellant and respondent, are respectively the parent body of a nation-wide labor union organization and a local chapter thereof originally organized pursuant to the constitution and by-laws of the General. One of those by-laws was (as quoted in the unreported memorandum by the vice-chancellor) that "the funds or property of the local union shall not be divided among the members individually but shall remain the funds and property of the local union for its legitimate purposes, while seven members remain therein * * *. Should a local union dissolve, have its charter revoked or withdraw from the brotherhood, its books, papers, seal and moneys shall be forwarded to the G. S. T." The vice-chancellor went on to say: "The G. S. T. is the general secretary-treasurer of the brotherhood. I interpret this provision to mean that upon the revocation of the charter of the local union, title to its property shall vest in the brotherhood. The charter, so-called, is the evidence that the local is a member of or affiliated with the brotherhood. The charter of Local No. 213 has been revoked."

It is unquestionable that the fund now in court constitutes a part, or perhaps all, of the property of Local No. 213 whose charter has been revoked. The vice-chancellor appears to have been clearly of the opinion, and we concur in that view, that but for an unusual circumstance presently to be discussed and which indeed is the crux of the litigation, the fund in court should be paid over to General. The Local was expelled from the brotherhood in 1932 by proceedings taken pursuant to the constitution and by-laws of the parent organization, the validity of which is attacked in the court of chancery, which was there upheld, the bill dismissed by the same vice-chancellor, and no appeal ever taken. So far, therefore, as relates to the particular proceedings under the constitution and by-laws of the General organization and the expulsion thereunder and the rights and liabilities arising by reason thereof, no question arises or has been suggested in the present case.

The difficulty giving rise to the present litigation is due largely, if not entirely, to the fact that the Local, which was originally organized in 1899 under the charter and by-laws of General as a voluntary beneficial association, found it convenient in the year 1910 to incorporate under the laws of this state relative to associations not for pecuniary profit; and this avowedly on account of the celebrated decision in the *Danbury Hatters Case,* and obviously for the purpose, and probably for the sole purpose, of avoiding individual liability of members of the Local for damages arising out of labor disputes with employers. We do not find any copy of the certificate of incorporation printed in the case and consequently are without authentic information with regard to its contents although it seems to have been before the vice-chancellor formally or informally at the hearing. The fundamental point made in the case, and indeed the only material point, is that the fund in question was the legal property of this New Jersey corporation as distinct from the Local voluntary association originally organized, and consequently that such fund is not amenable to the provision of the general by-laws that upon the dissolution of the Local voluntary association its property shall become the property of the General organization.

The fund in court arises out of the following facts:

In 1925 the complainant, Fidelity and Deposit Company of Maryland, issued its surety bond in favor of "'Local Union No. 213, Brotherhood of Painters, Decorators and Paperhangers of America,' whereby in case of direct pecuniary loss suffered by the said Local due to the dishonest act of any employe of the said Local designated in the schedule attached to the said bond or agreement, the company would pay such loss within the limits of the bond or agreement, which bond was so executed in the amount of five thousand ($5,000) dollars." This bond is not printed in full. It was continued from year to year and was, and still is, in force apparently in its original form. In August, 1932, the Local discovered a shortage in the funds of its treasurer and made claim to the same upon the surety company which has apparently con-

ceded the correctness of the claim, and for reasons already stated, filed the bill in this case and paid the fund into court. This discovery, as we have said, appears to have been in August, 1932. Prior to this time, namely on December 31st, 1931, General had begun a proceeding under its constitution and by-laws to forfeit the charter of Local No. 213 for reasons that need not now be considered. On November 4th, 1932, there was a decree by General revoking the charter of Local; on the twenty-first of that month Local filed a bill in the court of chancery to set aside that revocation. There was a hearing and testimony before Vice-Chancellor Bigelow in October, 1933, and on May 14th, 1934, he signed a decree dismissing the bill and filed a memorandum which appears not to be reported, in which the dismissal is placed mainly upon the ground that our court of chancery will not interfere in a case of this kind where a parent body is a corporation of another state, unless property rights are involved. He held that property rights were not involved at that time and, in effect, that if the dispute was to be considered at all it should be laid before the courts of Indiana.

The printed book in the present case is submitted without any very full presentation of the relevant documents and without the taking of any testimony whatever under the present bill. There was considerable testimony taken under the former bill brought by the Local to set aside its expulsion by General and that testimony has been reprinted and embodied in the case apparently by consent. However, the facts before us seem to be quite sufficient to utilize as a basis of decision. Counsel have undertaken in their briefs by stipulation to confine the issues to two. The first issue as stated is as follows:

"Is the matter of the revocation of the charter of the Local *res judicata?*"

The second issue, which we do not quote in full, is in substance: who is entitled to the funds of the defunct Local 213 as between Local 213 and General?

We do not think that the first question calls for any specific decision.

Certainly it is *res judicata* for present purposes that a bill

in equity will not lie in New Jersey in favor of Local to set aside its expulsion by General. Whether such a bill would lie in Indiana is a matter for the courts of that state to decide.

As to the second question, the point made for Local simply is that because some eleven years after the organization of Local as a subordinate lodge, so to speak, of General, and as a voluntary association, Local deemed it advisable for the protection of its individual members against damage suits to become an incorporated organization under our statute, therefore this created an entirely different entity independent of General, not amenable to it, and although apparently functioning under the same name as before, a legal corporation in whose favor and in whose favor alone the complainant in this cause issued its guarantee policy; and that in consequence, notwithstanding that Local continued to function for years as a subordinate lodge of General subject to its constitution and by-laws and particularly reaping all the benefits resulting or that might result, from its membership in a national trades union, nevertheless when called to account by General under proceedings apparently regular, when expelled from General as a result of those proceedings, and when as a result of such expulsion General became entitled to its property and assets Local could then invoke the convenient New Jersey incorporation obtained for an entirely different purpose and maintain its claim individually to the property and assets including the fund in question because of that incorporation. This seems to be in effect what was decided by the vce-chancellor.

We find ourselves wholly unable to agree with him in such a finding. On the most elementary principles of equity it would seem that a subordinate organization which for so many years has reaped the benefits of its membership should be similarly charged with the corresponding burdens, and that when in addition to its membership it elected to take out a state incorporation for the purpose, and so far as the testimony indicates for the sole purpose of protecting its individual members from liability for damages, such ancillary incorporation should not be allowed to operate as an obstruc-

tion or hindrance of its obligation under the by-laws which it has never repudiated in any way, and the decree of General thereunder should stand at present unchallenged. Our conclusion, therefore, is that the decree under review should be reversed, with directions to the court of chancery to award the fund in court, subject to the usual costs and allowances, to the General Brotherhood. namely the Indiana corporation.

*For affirmance*—LLOYD, BODINE, PERSKIE, HETFIELD, WOLFSKEIL, JJ. 5.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, DONGES, HEHER, DEAR, WELLS, RAFFERTY, JJ. 8.