The bill was filed by two labor unions and one, Fred Sickels. Of the two complainant unions one is the International Union of United Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, C.I.O., and the other union is the Brewers Union Local No. 2, being a local union chartered by the said International Union. The larger body will hereinafter be referred to as the "International" and the local organization will hereinafter be referred to as the "Local Union." Both organizations are affiliates of the C.I.O., also known as the Congress of Industrial Organization.
The bill is brought against 12 persons, six of whom are alleged to be the former officers of said Local Union and the other six of whom are alleged to have been members of the executive board of said Local Union. The controversy between these conflicting parties arises from certain efforts made and action taken by the members of the Local Union to change that union's affiliation from the Congress of Industrial Organization (hereinafter called C.I.O.) to the American Federation of Labor (hereinafter called A.F.L.). Complainants charge that such efforts and action were in pursuance of a conspiracy to accomplish an unlawful secession by the Local Union from the International, to the end that there might be established an unlawful affiliation between the Local Union and the A.F.L. The proofs show that the International was affiliated with the A.F.L. from 1887 until 1941, when, because of certain jurisdictional disputes not here pertinent, the A.F.L. suspended the International. While this action of the A.F.L. has been referred to by the witnesses as a suspension, it seems, however, that the International was actually ousted from the American Federation of Labor in 1941 and that the International continued without any affiliation until July of 1946, when it affiliated itself with the C.I.O. That new affiliation was not to the liking *Page 563 
of the Local Union. It expressed itself on the question by a vote of 347 against affiliation with the C.I.O. and seven in favor of such affiliation. The vote of all the locals themselves was, however, quite different. A majority of the local unions were in favor of the new affiliation and, accordingly, the International effectuated it. The members of Local Union No. 2 continued dissatisfied, and I haven't the slightest doubt that they were determined at the first favorable opportunity to return to the fold of the A.F.L. Such action, however, was not taken so long as there continued in force and operation contracts between the Local Union and various brewery companies by which the members of the Local Union were employed. These contracts had been negotiated by Local No. 2 as the agency for collective bargaining between the employers and the workmen. These contracts expired on March 31st, 1947. The following May the A.F.L. offered a charter to Local No. 2. Either shortly before that time or a few days thereafter — it matters little which is the fact — the members of the Local Union voted in favor of accepting the charter and establishing its affiliation with A.F.L. At this time the membership of the Local Union consisted of 608 persons, of whom 607 voted in favor of the new relationship. Only one member, a Mr. Haff, declined to go along. He refused to pay dues and he left the job he held with the Breidt Brewing Company, which employed him. Upon the new charter being obtained, Local No. 2 elected as its new officers virtually all the persons who had theretofore acted as officers. It was pointed out that the membership has since that time expanded in number, but that fact is of no importance in relation to the controversy in this case.
Rumors reached the International at its home office in Cincinnati, Ohio, that Local No. 2 was heading in the direction of a severance from the C.I.O. and it acted at once through its general executive board. On March 19th, 1947, that board passed a resolution reciting that Local No. 2 had applied to the A.F.L. for a Federation charter "without submitting the matter to a vote of the membership," and that therefore the Local Union was placed under the trusteeship of Fred Sickels, who was empowered to take full charge of *Page 564 
the affairs of the local, to remove all its officers and to appoint temporary officers during such trusteeship. The following day the International notified Walter Ruhnke, the secretary of the Local Union, of the appointment of Sickels as trustee and demanded that there be turned over to Sickels all the books and other property of the Local Union, including its moneys. Compliance was refused.
On April 15th, 1947, the bill was filed in this cause, which bill charged a conspiracy between the defendants with members of certain locals of a Teamsters Union to accomplish the "secession" already referred to. The bill prays generally for an adjudication that the defendants had been properly and duly suspended from their respective offices in the Local Union, that Fred Sickles had been duly appointed trustee of the union, that the defendants be compelled to turn over to that trustee all the books, property and funds of the union, that the individual defendants be enjoined from exercising their offices in the local and that they be restrained from collecting dues from its members and from exercising any rights as collective bargaining agent for the members of the local. Coupled with their answer, which set up various defenses, is the counter-claim of the defendants seeking, amongst other things, an adjudication that the funds and property of Local No. 2 are its own property and that complainants have no interest therein, and that such decree be entered as shall be necessary to accomplish the transfer of title to said funds and property to the counter-claimants. Thus it is seen that the crux of the controversy is the property of the Local Union. Complainants endeavor to obtain and hold that property as a fund belonging to Local No. 2 if that local can be so reorganized as to become and remain an International affiliate and, therefore, a C.I.O. entity. The defendants' position is that the funds and property of the Local Union, held by its officers, constitute a trust fund, the equitable and beneficial ownership of which belongs to the members of the union at all times, regardless of such affiliations as may from time to time occur by the majority will of the members constituting the Local Union, and that the International has no property right or interest in that trust fund. This is the principal *Page 565 
issue in this case. The remaining issues are merely incidental and collateral.
I stop here to dispose of two matters. The charge of conspiracy between the defendants and members of certain teamsters unions is wholly unsubstantiated. There was no evidence offered or effort made to sustain the claim of a conspiracy. Nor is there any evidence in the case of any conspiracy amongst the defendantsinter sese, unless their activities in calling the members together and submitting for their vote the question of the new affiliation can be regarded as conspiratorial. That, of course, depends upon the lawfulness of the object sought to be attained, for the means themselves were obviously proper and lawful. On the lawfulness of their purpose more will be said hereafter.
The other matter concerns the suspension by the International of the officers of the Local Union and the appointment of a trustee to take over the union's funds and property. It was more than a suspension; it was a removal from office. But whether it be the one thing or the other, the vice of that action lies in the fact that it was done without anything resembling that "due process" so essential under the law where one is deprived of any kind of property, whether it be money or an office or a legal right. These defendants, who were charged with disloyalty and conspiracy, were never confronted by their accusers. No charges were ever made against them to the International, except those charges which were based on rumor, made ex parte and unserved upon the accused. No trial or hearing of any kind was afforded them, and this notwithstanding the fact that the constitution of the International confers upon its general executive board jurisdiction to try individual members, local unions and others for offenses, and provides that charges shall be filed in writing with the general secretary of the International and a copy of such charges served personally or by registered mail upon the accused, "together with notice of the time and place of trial." The constitution further provides that upon a finding of guilt by the general executive board, the accused may appeal to the next convention. None of this was observed, and it is no answer to say, as complainants claim, that events moved so *Page 566 
rapidly that there was no time for the observance of these requirements. There are no possible conditions which excuse the denial to these defendants of their right to be heard on those accusations which prompted their removal. As to International's effort to seize the Local Union's property, more must be said. It possessed no such right of seizure, but even if it had such right it was not exercisable unless and until the defendants had that trial or hearing contemplated by the provisions of International's constitution. Therefore I hold that the removal of the defendants from their respective posts and the appointment by International of a trustee over the property of the Local Union was unlawful and void.
I come now to the essential question. Has a local union the right, by the will of its membership, to withdraw from its affiliation with an international labor organization, and if it has, what is the effect upon its funds and property? I have examined the constitution of the International and find that it conforms to an old and well recognized pattern. It provides that any local group composed of 20 or more workers in the brewery,c., industry "can affiliate with the International Union" by applying for a local union charter and paying certain dues and assessments. It is true that under that constitution it is provided that a worker becoming a member of a local union becomes thereby also a member of the International, but the significant fact is that the International is a federation of local unions. Dues by the workmen are not paid directly or in the first instance to the International but are paid to the local union, which, in turn, remits out of these dues a per capita tax to the International. The relationship is closely analogous to that considered by the Court of Errors and Appeals in the case ofState Council, c., v. Enterprise Council No. 6, 75 N.J. Eq. 245.
That case involved the relationship between a national council, a state council and subordinate councils composed of individual members. These councils constituted a beneficial order, but the individual members paid their dues to their subordinate councils. Here, as there, the relationship between the individual members and their immediate organization (the subordinate council) constitutes the very life of the entire structure. *Page 567 
The existence of the Local Union, its revenue and its functions, are not derived from or dependent upon the International. These individual unions could well continue their existence and their functions without any relationship with any national or international labor organization. Such relationship may have its decided advantages but it is not a sine qua non. On the contrary, the international union does depend for its continued existence upon affiliation with the local unions and upon receiving from the latter dues or per capita tax, or by whatever other name that revenue be called. Each local union is a separate and distinct voluntary association which owes its creation and continued existence to the will of its own members. The property accumulated by the local union from contributions made by the individual members is a trust fund for the benefit of those members, and though the legal title to such property may be vested in the officers of the local, such ownership is of a trust character for the use of the individual members. The affiliation with the international union undoubtedly creates the liability resting on the local union to pay, while such affiliation endures, the dues or per capita tax called for in the international charter, but that gives the international union nothing more than a claim or an account receivable. No direct property right in the local union's assets can or does arise in favor of the international. The relationship between the international and its constituent local unions is that the local unions are the constituent units in a confederation comprising the international. That confederation is a voluntary one and any local union is free to withdraw from the alliance. It cannot be rationally claimed that a combination of local unions constitutes a single indivisible and indestructible union from which no constituent may secede or be expelled. If this were not so, then the A.F.L. was powerless to expel the International, as it did in 1941, and Local No. 2 would still be to-day an affiliate of the A.F.L. by virtue of the original union with that national body. By the same reasoning the International would still be to-day an affiliate of the A.F.L. and the relationship with the C.I.O. could never have arisen. The very word "affiliate," as used in the charter of the International, is strongly suggestive *Page 568 
of a relationship which endures only at the joint will of the larger and smaller bodies, a relationship which is severable at the will of either. When such severance or dissolution occurs, the local union withdrawing or expelled, as the case may be, continues its own separate voluntary existence, freed only of an affiliation which never was more than transient. The right of withdrawal reposing in each local union, it cannot therefore be said that the Local Union is guilty of disloyalty or treason in the act of withdrawal or that its officers accomplishing that result are themselves so guilty. Nor should this court concern itself with the motives of the members of a local union desiring and accomplishing a change in affiliation. The legal right to make such change being unquestioned, the underlying motives are of no importance in this investigation. These views are in accord with the opinion of this court in Schweitzer v. Schneider,86 N.J. Eq. 88; affirmed (Court of Errors and Appeals), in Id.256.
In view of the briefs filed with me for the complainants, I might add that no analogy may be drawn between the cases dealing with the relationship between an international labor organization and its local unions and those other cases which involve the relationship between a mother church and its constituent churches. The latter relationship is rooted in ecclesiastical law and the traditions and practices of centuries. Some of the cited cases are grounded in statutory law and are entirely without application to the situation here presented. I therefore hold that Local No. 2 had a right at all times to withdraw as an affiliate of the International, that when it did so it acted rightfully and that its action in so doing reflected virtually the unanimous will of its membership. I further hold that during the period of its affiliation with International and at all times since its present affiliation with A.F.L., Local No. 2 was and continues to be a separate and distinct voluntary association, beneficially possessed of its accumulated moneys and property, held by the officers in trust for the membership.
The Local Union is joined as a co-complainant herein. This was not with the consent of its present officers or with the approval of its members. Undoubtedly it was so joined *Page 569 
upon the theory of International's counsel that it, Local No. 2, could never make its farewell bows to International and that the Local Union remained forever an indivisible part of the larger body. The fallacy of that view has already been shown. The Local Union was improperly joined.
I advised a preliminary injunction so as to preserve the subject-matter until final hearing. In the order of preliminary injunction I directed the defendants to turn over to the complainant Fred Sickel, as trustee, the books, records, property and funds of the Local Union and directed that trustee to conserve the property and to make no disbursement of funds without prior leave of court, except to pay to the International the per capita tax due from the Local Union and to pay rent for the offices of the Local. This was not intended to be a recognition of the appointment of Sickel theretofore made by International's executive board. Sickel's appointment by me was in the nature of a custodial receivership. That appointment will now be vacated and he will be ordered to restore the property to the defendants, as officers of the Local Union.
Following my signing the preliminary injunction, the International, through its representatives, caused publications to be made in trade journals and letters to be sent to the members of Local No. 2, containing statements which clearly were a misinterpretation of this court's action in allowing the preliminary restraint. I have no doubt that the misinterpretation was willful and was designed to create the impression in the reading public's mind that in granting the preliminary restraint the court had found in favor of the complainants on the merits and that such finding was more than temporary. In consequence of this conduct, the defendants have here invoked the unclean hands doctrine and they have asked that I deny any relief to the complainants because of that conduct. I need cite no authorities for the rule that a suitor for relief in this court must not alone come in with clean hands with respect to the subject of the controversy exhibited by his bill but that he must keep them clean in relation to that controversy at all times during the pendency thereof. This is not to say that a complainant must observe a rigorous silence outside of court. His suit being a matter of public record. *Page 570 
he has the undoubted right to publish to the world the fact of the pendency of the suit and the nature thereof, providing he reports those things truthfully. He may even publish his bill of complaint once it has been filed and becomes a public document. For such publication he is not answerable, whatever be the outcome of the suit. He has the same right to publish any action taken by the court, but he has no right to interpret that action. That action must be left to speak for itself. A complainant is free to publish the court's orders and its opinions given in relation thereto; but if he does more than that, if he proceeds to interpret those orders or opinions, he then assumes the risk that if misrepresentation, willful in nature, be found, he may be denied the equitable relief sought by him. In the instant cause complainants stepped outside the field of correct and truthful reporting and entered the zone of willful misrepresentation. In doing this they offended and relief might well have been denied them on that ground. I chose, however, to consider the dispute on its merits and have already shown that on those merits the bill is not maintainable. I shall not, therefore, make the offending conduct of the complainants the basis of my decree.
The bill of complaint will be dismissed with costs against the International only. A decree in accordance with these conclusions may be presented on notice. *Page 571