6 N.J. Super. 589 (1950)
70 A.2d 901
UNITED PUBLIC WORKERS OF AMERICA, PLAINTIFF,
v.
ARTHUR H. FENNIMORE AND GUSTAVE V. LAUCH, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 3, 1950.
*590 Mr. Morton Stavis, for the plaintiff.
Messrs. Rothbard, Harris & Oxfeld, for the defendants.
JAYNE, J.S.C.
That which at first sight appears to be a discordancy in judicial decisions often vanishes upon recognizing the diversity of the basic facts of the cases. A slight dissimilarity in the factual circumstances may control the choice of competing legal principles. So here.
The trade union known as Local 423, United Public Workers of America was affiliated with the plaintiff, a parent organization, United Public Workers of America, until January 6, 1949, at which time its entire membership in attendance at a regular meeting unanimously voted to sever its alliance and to affiliate with the Utility Workers Union of America, from which it received a charter as Local 423 of the latter organization.
It seems evident that the dissension that disjointed the former attachment arose from the disinclination and refusal of the plaintiff to submit the non-Communist affidavits and some other forms required by the Management Relations Act of 1947, more popularly known as the Taft-Hartley Act. The position taken in this regard by the plaintiff is said to have operated so disadvantageously to the members of the local as to constitute a breach of duty justifying the secession.
On January 7, 1949, which it will be noted was the day following the meeting, the plaintiff, acting through its president, suspended the charter of the local, appointed an administrator *591 of its affairs, and commanded the defendant Lauch to deliver to the administrator "all books, moneys, properties, Charter and Seal" of the local.
On January 13, 1949, the president of the plaintiff gave notice to the local and particularly to the defendant Fennimore that a hearing of certain specified charges against the local would be held on February 3, 1949. The defendants did not attend, and it is conceded that no hearing was conducted.
It is my understanding that all of the former members of the Public Workers Local are now members of the Utility Workers Union, and that the former local is out of existence and has been since the meeting of January 6, 1949.
I take the constitution of the United Public Workers of America C.I.O. to be the contract of the former affiliation. Harris v. Geier, 112 N.J. Eq. 99, 164 A. 50 (Ch. 1932); Cameron v. International Alliance, etc., 119 N.J. Eq. 577, 183 A. 157 (E. & A. 1936).
In Article 8 the following sections may be found:
"Section 21. A Local Union shall not withdraw from the International Union or dissolve so long as seven (7) members in good standing object thereto. Three months' notice of intention to withdraw shall be given to the International Executive Board, and, upon such withdrawal, title to all monies, books, seals and other property of the Local Union shall be vested in and be delivered to the International Union.
"Section 22. All the funds and property of each Local Union shall be deemed held in trust for the benefit of its members in their collective capacity and shall be used only as provided for in this Constitution under the supervision of the International Executive Board. In the event of dispute within a Local Union as to the right to or custody of funds or property, the decision of the International Executive Board shall be final and binding upon all officers and members of the Local Union."
In this case the centrality of controversy does not relate to the withdrawal and actual extinction of the local, but implicates the present title to the local's assets.
In the consideration of that issue I feel obliged to ascribe grave significance to the terms of section 21 of Article 8 of the constitution of the parent organization. Its provisions are somewhat dissimilar to the constitution and by-laws *592 involved in our prior decisions in that here it was expressly agreed that "upon such withdrawal, title to all monies, books, seals, and other property of the Local Union shall be vested in and be delivered to the International Union." Compare Fidelity, etc., Co. v. Brotherhood, etc., America, 120 N.J. Eq. 346, 184 A. 832 (E. & A. 1936).
I observe that in International Union, etc., C.I.O., v. Becherer, 142 N.J. Eq. 561, 61 A.2d 16 (Ch. 1948); affirmed, 4 N.J. Super. 456, 67 A.2d 900 (App. Div. 1949), the pertinent language was: "If, however, the charter of a Local Union is suspended, or revoked, then any balance remaining to the credit of the Local Union shall be forwarded to the General Secretary-Treasurer of the International Union who shall hold it in trust for the purpose of reorganization."
Moreover I am of the opinion that sections 21 and 22 should be associated agreeably and not discordantly. Section 22 pertains to the use and maintenance of the funds and property of the local while it is functioning as an affiliate. Section 21 relates to their destination in the event of a disaffiliation.
To confine the application of section 21 to only "such" withdrawals as may have been effectuated by three months' notice and none other, would assuredly be too narrow an interpretation and permit preposterous results.
It is not perplexing to envision comprehensively the intent of section 21. Consonant with the nature of voluntary associations, it was expedient to prescribe some procedure for the withdrawal of a local member union, but from the point of interest of the International, withdrawals should be discouraged, hence the requirement of a three months' "cooling off" period of possible mediation, less than seven objecting members, and the surrender to the International of all moneys, properties, and records of the seceding local notwithstanding the fact that the local has currently paid in full its per capita contribution to the International.
In the Court of Chancery in Fidelity, etc., Co. v. Brotherhood, etc., America, supra, it was resolved, inter alia, that the provision relating to the capture of the assets of the local by the International upon the expulsion of the local was penal *593 in character, and that Chancery would not aid in the enforcement of a forfeiture, yet the Court of Errors and Appeals without any comment upon that point reversed the decree. Incidentally, I have cautiously examined the state of the case and briefs submitted on that appeal, and obviously the decree could have been sustained had that ground been approved.
Let me pause to note that in the very recent cases of Clark v. Fitzgerald, N.Y. Supr. Ct., Spec. Term, Part III, reported in the New York Law Journal on December 6, 1949, and Duris v. Iozzi (C-719-49) filed in this court on December 15, 1949, 6 N.J. Super. 530, the factor of expulsion was implicated.
I suppose every mischievous and disobedient school boy recognizes the distinction between "suspension" and "expulsion." See Grand Lodge of International Ass'n of Machinists v. Reba, 97 Conn. 235, 116 A. 235 (1922); 4 Am. Jur. 468, § 21.
Acknowledging the right of the local to sever its alliance at its will, can it thus extinguish its contractual obligations to the International? Justice Parker speaking for the Court of Errors and Appeals in the Fidelity case remarked, "On the most elementary principles of equity it would seem that a subordinate organization which for so many years has reaped the benefits of its membership should be similarly charged with the corresponding burdens * * *."
Consider hypothetically that a group of persons voluntarily gained admission to the X Home for the Aged and each in addition to an agreement to bequeath and devise by will, also contracted that upon his withdrawal the title to all his assets should vest in that institution, and subsequently the members of the group believed that they could derive more advantages and obtain more comfortable accommodations at the Y Home for the Feeble, no one would doubt their right to change their place of abode, but are they at liberty to repudiate their contractual obligation to the former institution?
Again hypothetically we imagine a local having 1,000 members. The constitution of the parent union in pursuance of which the local received its charter provided that the property *594 of any local union could not be transferred so long as ten members of the local remained loyal to the parent union. At a meeting of the local, 990 members adopted a resolution to disaffiliate and (a) to transfer the property of the local to a local of a rival organization which they intended forthwith to create; or (b) divide the funds among the seceding members. Ten members decided to remain loyal to the parent union. The majority contend that since the funds of the local belong to its members, they are entitled to 99% of them for their purposes. Are they not bound by the provisions of the constitution of the parent union? Local No. 2508, Lumber and Sawmill Workers v. Cairns, 197 Wash. 476, 85 P.2d 1109 (1938); Lumber and Sawmill Workers Union No. 2623 v. International Wood Workers, etc., 197 Wash. 491, 85 P.2d 1099; Local No. 2618 Plywood, etc., Workers v. Taylor, 197 Wash. 515, 85 P.2d 1116; Brotherhood of Railroad Trainmen v. Williams, 211 Ky. 638, 277 S.W. 500.
It has been generally supposed that the title to the general funds and the power of control over them, as between the central organization and the subordinate bodies by which the funds were raised, depend on the laws of the society, and on the voluntary dissolution or withdrawal of a subordinate body, disposition of its property will be determined under the applicable terms, provisions, and regulations of the affiliation.
In the circumstances of the present case the judgment must go in favor of the plaintiff.