# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2144-23

D.D.H.,

    Plaintiff-Respondent,

v.

R.K.,

    Defendant-Appellant.

_____

        Submitted May 14, 2025 – Decided July 9, 2025

        Before Judges Rose and Puglisi.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-0732-24.

        R.K., appellant pro se.

        Respondent has not filed a brief.

PER CURIAM

Defendant R.K.[1] (Ronald) appeals from the February 6, 2024 final restraining order (FRO) entered against him in favor of plaintiff D.D.H. (Debbie) pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

I.

In October 2023, the parties were in a six-month dating relationship. They obtained temporary restraining orders (TRO) against each other, adjudicated in a single FRO hearing during which Debbie was self-represented and Ronald was represented by counsel.

During her direct examination, Debbie testified that on October 16, 2023, Ronald appeared uninvited and unwelcome at her apartment complex. Knowing Debbie kept a spare key to her outside apartment door in her unlocked vehicle, Ronald searched the parking lot for her car,[2] took the key and then "barge[d]" into her apartment. Although Debbie told him several times to leave and tried to "push him out," Ronald stayed the night.

---

[1] We use initials and pseudonyms to preserve the confidentiality of domestic violence court records, R. 1:38-3(d)(9), and protect the confidentiality of the victim, R. 1:38-3(d)(12).

[2] During the hearing, Debbie played a video purporting to be Ronald searching the parking lot for her car, but the court did not rely on this evidence in deciding this matter. The video was not provided to us in the record on appeal.

Debbie testified Ronald took her cell phone from her so she was unable to call for help and then slept on the floor of her room. Several times during the night, Ronald tried to get into bed with Debbie but she fought him off with a belt.

The next day, Ronald gave Debbie her phone and told her he was going to take her to New York that day. She told him no and again asked him to leave. The conversation escalated into an argument, which then turned physical. Debbie testified Ronald pushed her against the closet door and choked her, then threw her to the ground, stomped and kicked her.

When Debbie tried to leave the apartment to summon help, Ronald grabbed her by the hair and pulled her back into the apartment. Debbie went into the kitchen and grabbed a knife but Ronald "was not afraid at all." He eventually let Debbie go and she went to her next door neighbor, who called 911. When police arrived, they took photos of Debbie's injuries, including a broken fingernail and scratches on her face and neck, and her cracked cell phone screen. Ronald was arrested that day, although the record does not reflect whether he was charged with a criminal offense or the status of any charges.

A-2144-23

Debbie testified to prior acts of domestic violence on different occasions wherein Ronald got "violent" with her, threw her on the ground, kicked and hit her.[3] She also stated Ronald began "forcing himself" on her in June.

Debbie explained why she needed an FRO:

> If I don't get this restraining order he can come to my house at any time to try to basically do what he did last time which is abuse, and coming into my house unannounced.
>
> I am tired. I don't want to be going through this anymore. And I've warned him several times to please stay away from me. He has not listened and it has gotten to this point where I have to come to court in order for me to get a restraining order.
>
> If I do not have this restraining order I am going to keep going through the same stuff over and over and over again and I don't want to keep going through this.
>
> I want him to stay away from me. This is the reason why I need this restraining order. It is very important not only for my mental health, but for my safety. I have to make sure that he is away from me.

Ronald's testimony disputed much of Debbie's account. Ronald testified he routinely let himself into Debbie's apartment and she permitted him to enter

---

[3] Although the judge commented to Debbie there was "nothing" in her TRO "about a history of domestic violence and him hitting [her] in the past," and noted the TRO "[d]idn't say anything about an aggravated assault or a simple assault," the TRO indicated as a prior domestic violence history "unreported incidents between the parties of domestic issues and possible sexual assault."

that night.  He denied taking her cell phone and instead said the argument began because she was texting someone else, which resulted in his sleeping on the floor.  Ronald stated that during the night, Debbie hit him with her belt and tried to bite his ear and neck.  He denied hitting her and instead said he only tried to push her away.

Ronald testified that after he made breakfast the next day, they argued again, which turned physical.  He said Debbie hit him and, when she tried to get her belt to hit him again, he shut the door on her.

Ronald also testified about a prior history of physical violence against him, which he documented with photos of injuries to his chest, knee and hand from two prior incidents.

After considering the evidence, the judge issued an oral opinion granting each party's request for an FRO against the other.  The judge found Debbie established predicate acts of assault and criminal mischief.[4]  After defining the elements of assault, the judge noted the parties provided "conflicting testimony" but was satisfied "the two parties did get into a physical altercation, that the two

---

[4]  The judge did not explain the basis on which he found Ronald committed criminal mischief.  Debbie alleged Ronald pushed her into her television, which broke as a result.  However, the judge discounted her testimony in this regard, finding Ronald's actions were neither purposeful nor knowing, and that breaking the television was accidental.

A-2144-23

did attack each other."  The judge also noted both parties provided photographs of their injuries sustained at the other's hand.

Based on the nature of the events that gave rise to the TROs, along with "some history of domestic violence between the parties," the judge found there was a need to enter an FRO to protect both parties from future acts of domestic violence.

This appeal followed, in which Ronald argues:  (1) the trial court erred by considering altered video evidence which was misleading; (2) Debbie made conflicting statements and untruthful testimony during the hearing; (3) Debbie submitted falsified evidence of injuries that did not occur on October 17, 2023; (4) Debbie's photographs did not depict visible injuries, but his photographs showed evidence of prior domestic violence incidents; and (5) the trial judge erred by allowing Debbie to testify about different incidents unrelated to the incident on October 17, 2023 and not contained in her TRO.  We disagree and affirm.

## II.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings."  D.N. v. K.M., 429

6

N.J. Super. 592, 596 (App. Div. 2013) (citing <u>Cesare v. Cesare</u>, 154 N.J. 394, 411-12 (1998)). We should not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." <u>Cesare</u>, 154 N.J. at 412 (quoting <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when the evidence is testimonial and involves credibility issues because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. <u>Pascale v. Pascale</u>, 113 N.J. 20, 33 (1988) (citing <u>Gallo v. Gallo</u>, 66 N.J. Super. 1, 5 (App. Div. 1961)).

The purpose of the PDVA is to "assure the victims of domestic violence the maximum protection from abuse the law can provide." <u>G.M. v. C.V.</u>, 453 N.J. Super. 1, 12 (App. Div. 2018) (quoting <u>State v. Brown</u>, 394 N.J. Super. 492, 504 (App. Div. 2007)); <u>see also</u> N.J.S.A. 2C:25-18. Consequently, "[o]ur law is particularly solicitous of victims of domestic violence," <u>J.D. v. M.D.F.</u>, 207 N.J. 458, 473 (2011) (alteration in original) (quoting <u>State v. Hoffman</u>, 149 N.J. 564, 584 (1997)), and courts will "liberally construe [the PDVA] to achieve its salutary purposes," <u>Cesare</u>, 154 N.J. at 400.

When considering an application for an FRO, a trial court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006).

If the court finds a defendant committed at least one predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)(1) to -(7)], to protect the victim from an immediate danger or to prevent further abuse." Id. at 127. It is well settled that when a court finds a defendant committed a predicate act involving physical violence, the issuance of an FRO is generally warranted. A.M.C. v. P.B., 447 N.J. Super. 402, 417 (App. Div. 2016).

The judge determined Ronald committed assault, one of the predicate acts set forth in the PDVA. N.J.S.A. 2C:25-19(a)(2). Relevant here, a person commits assault if the person attempts to cause or purposely, knowingly or recklessly causes bodily injury to another. N.J.S.A. 2C:12-1(a)(1).

Having reviewed the record, we are satisfied it contains sufficient credible evidence supporting the judge's determination Ronald assaulted Debbie. Both parties testified they engaged in an argument that turned physical, and police photographed the injuries to Debbie. While Ronald disputes Debbie sustained a broken fingernail on October 17, 2023, we discern no reason to disturb the judge's findings. Having found the predicate act of assault and in light of the parties' previous history of physical domestic violence, we concur with the judge's determination the necessity of an FRO was self-evident.

The remainder of Ronald's arguments—points one, two, four and five— were not raised during the hearing. We decline to consider an issue not properly presented to the trial court unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Neither circumstance is present in this matter.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

9

A-2144-23