THE NATIONAL COUNCIL OF THE JUNIOR ORDER OF UNITED
AMERICAN MECHANICS OF THE UNITED STATES OF AMERICA

*v.*

THE STATE COUNCIL OF THE JUNIOR ORDER OF UNITED AMERI-
CAN MECHANICS OF THE STATE OF NEW JERSEY et al..

[Submitted December 10th, 1902.  Decided January 23d, 1903.
Filed April 6th, 1903.]

1. Where a fraternal society is composed of local councils formed from
individual members, state councils, composed of delegates from the local
councils, and a national council composed of delegates from the state
councils, these relationships all being purely voluntary, and the members
having a right to withdraw at any time, and the state and national coun-
cils are supported by taxes on the individual members, but neither has
any power to enforce the tax, the tax levied by the national council being
collected by the state councils, with the tax levied for their own support,
money collected by a state council by a tax levied on the members within
its jurisdiction is not impressed with a trust in favor of the national
council unless it was assessed and collected for the very purpose of meet-
ing the demands of such national council.

2. Where a state council of a fraternal society actually collects a tax
on its members imposed by the national council of the order for its bene-
fit, the fact that the officers who handled the money have paid it out for
other purposes is no defence to an action by the national council to re-
cover such money.

3. In an action by a national council of a fraternal society to recover
from a state council of the order money collected by a per capita tax on
its members, the burden is on the national council to establish that the
tax was assessed and collected for its benefit.

4. Evidence in an action to enforce a trust in money collected by a state
council of a fraternal society on a per capita tax of its members, claimed
by the national council of the order to have been collected for it, exam-
ined, and *held* that the national council had failed to show that the money
was collected for its benefit.

Heard on bill, answer and proofs.

*Mr. Barton B. Hutchinson* and *Mr. Charles L. Corbin,* for the
complainant.

National Council v. State Council of Jr. O. U. A. M.

*Mr. Fergus A. Dennis* and *Mr. Alan H. Strong,* for the defendants.

PITNEY, V. C.

The bill was filed by the National Council of the Junior Order of United American Mechanics of the United States against the state council of the same order for the State of New Jersey and three of its officers, defendants.

The object of the bill is to enforce a trust of moneys.

The allegation of the bill is, in brief, that the defendant has in the hands of its treasurer a certain sum of money received by it in trust for, and therefore belonging to, the complainant. The suit corresponds precisely with an action at law for moneys had and received, and the cause of action, if it exists as alleged, would warrant an action at law. But a court of equity has clear jurisdiction on the score of taking an account, and no objection is made by the defendant on the ground of want of jurisdiction.

The complainant is a corporation of the State of Pennsylvania, created in accordance with its laws, by articles of association made, filed and approved in one of the courts of that state on the 11th of April, 1893.

The defendant was incorporated by a special act of the legislature of this state, approved February 25th, 1875. *P. of Priv. L. of 1875 p. 52.* The objects of the association are stated thus:

"The objects of this association shall be to maintain and promote the interests of the American youth; to assist them in obtaining employment; to encourage them in business; to afford relief to the members thereof, and to defray the expenses of their funerals or such other cases of distress as shall be defined by the by-laws."

The defendant association had been organized several years before its incorporation, and had united with similar organizations in some of the adjoining states in organizing a national council, which latter was unincorporated until 1893.

The complainant corporation has a constitution, by-laws and officers, and a legislative body, composed of delegates or representatives from the various state councils throughout the United States.

The defendant corporation also had a constitution, by-laws and officers, and a state council, composed of delegates sent up by the subordinate councils located in various parts of the state, who also had their respective officers and individual members.

The individual members of the local councils appear to be the only constituent members of the different grades of council. Neither the state council nor the national council has, I understand, individual members.

The national council raises funds by levying a capitation tax on each member of the subordinate councils. The aggregate of the tax depends, of course, on the number of the membership.

The order for this tax is transmitted to the officers of the state council. It mentions no gross sum to be raised, but merely fixes the amount per head.

The state council procures funds to meet this demand by the national council, and, at the same time, funds for its own purposes, by imposing a single per capita tax on the individual members of the subordinate councils, greater, of course, than the national tax.

This process is much like that of the tax imposed by a county upon the property of its different citizens, which is raised and levied by the taxing and collecting officers of each township or other municipality, and which latter adds to the amount so levied what is necessary for its own purposes, collects the whole, pays over the amount collected for the county, and retains the balance.

In June, 1899, the national council, at its regular annual meeting, levied a tax of fifteen cents for its general purposes and ten cents for the support of an orphan home, a benevolent institution conducted by the order—in all twenty-five cents— upon each and every member of the order under its jurisdiction, and made it payable one-half on the 15th of October, 1899, and one-half on the 15th of April, 1900.

The allegation of the bill, which was filed on April 17th, 1901, is that this tax was levied and assessed by the defendant corporation, the state council, and collected by it, to the amount of over $7,000, and that it has refused to pay it over.

National Council v. State Council of Jr. O. U. A. M.

The defendant denies that it levied a tax for that purpose. It admits the levying a per capita tax in October, 1899, but it sets up that it had thrown off its allegiance to, and dissolved its connection with, the complainant before it levied any tax upon the members of the subordinate councils after the assessment by the national council in 1899, and that no tax was levied or collected for that council.

It appears that it is the duty of each state council, in each year, to make a report to the national council, stating, among other things, the number of its members. The bill alleges, and the answer admits, that the defendant failed and refused to make this report for the year 1899. The bill also sets out, and the answer admits, the adoption, by the defendant, of certain rebellious resolutions in October, 1899, hereafter to be stated.

The practice of the state council is to hold an annual meeting in the month of October, when the financial officers make a report of their finances up to that date; the requisition for tax from the national council is laid before the meeting and dealt with, and a tax is levied at that time, to be paid in January and July of the next year.

A tax of forty cents per head was levied by the state council in the month of October, 1899, and collected during the next year—1900—and sufficient was collected to have paid the tax levied by the national council.

The precise question is whether the moneys realized by the defendant from that tax are impressed with a trust in favor of the national council. The complainant alleges the affirmative, and the defendant denies it.

In considering this question it must be borne in mind that the relation between the parties is a purely voluntary one. The constitution of the national council provides for the collection of a tax in the manner hereinbefore stated; but it is hardly necessary to remark that it has no power to enforce it. So with the state council; it imposes a tax upon the different subordinate councils, but has no power to enforce it. Neither have the officers of the subordinate councils any power to enforce a tax which they lay upon their members. Any member may withdraw at

any time. The adhesive power which holds these several bodies together is the supposed benefit, first, to the individual members by reason of their membership; then to the subordinate council by reason of its connection with the state council, and then to the state council by reason of the benefit supposed to be derived by its connection with the national council. The relation, indeed, between them is *quasi* contractual; but I can find no warrant anywhere in the case, nor in the law applicable thereto, for the notion that the national council could bring an action at law against any state council and recover damages for its refusal to collect any tax which the national council may impose. Whatever right of that sort exists is unenforceable by legal action, and hence the complainant was compelled to put its case upon the ground of a trust, for money had and received.

The state council, in collecting a tax imposed by the national council, acts purely as an agent or trustee for the national council, and becomes liable only after it has actually received the money. The trust is fastened upon the money actually collected.

It follows, as it seems to me, from this consideration, as a necessary requisite to the attaching of the trust, that the tax must be assessed and collected for the very purpose of meeting the demands of the national council.

It is not enough to warrant a recovery that the state council has collected moneys by tax, for the simple reason that it has occasion to use money for its own purposes. And the mere fact that it has money in the treasury, from whatever source, does not create a liability, either at law or in equity, to pay it over to the national council. It must, as I have said, be levied and collected expressly for the purpose of meeting that tax. On the other hand, if the state council has actually collected a tax imposed by the national council, it is no defence, on the part of the officers who handled that money, that they have paid it out for other purposes.

The complainant alleges that such a levy was made in October, 1899, and the printed minutes of the state council for that year are relied upon to establish that proposition. The state council has a standing committee which meet from time to time during

the year to pass upon and order the payment of various bills against it. Then just before the annual meeting of the representatives of the subordinate councils this committee seem to either make up themselves or adopt a report made by one of the officers of the whole transactions of the council for the year, and lay that before that body. This report includes the financial transactions of the year, the amount of moneys collected, and the disposition made thereof.

For several years prior to 1899 a capitation tax of forty cents had been imposed by the state council for each year, which produced from $10,000 to $12,000, and included the amount of the national tax. But the national tax was not uniform, or, rather, it was uniformly increasing each year, and as it increased, and the whole capitation tax imposed by the state council remained the same, the residuum for the use of the state council steadily decreased.

Now, in the report of 1898, in a subdivision under the head of "Per Capita Tax," we find a statement referring to the steadily-increasing draft by the national council. It says that the tax of the national council for 1894 was eight cents; for 1895, ten cents; for 1896, twelve cents; for 1897, seventeen cents, and that for the current year—1898—the national council had made their per capita tax twenty-five cents, "an increase of eight cents per member for this year, ten of which is for the orphans home." Then the report proceeds to say that the secretary had carefully gone over the expenses and the needs of the state council for the ensuing year, and that he is unable to see any way by which it can be covered for less than twenty cents per member, except by using the balance already in the treasurer's hands, which he thinks should not be done; and he thinks that the per capita tax should be as follows—stating the details of it, and making it up to forty-five cents per member; but that, after writing that much of the report, and having talked with other members, he finds that the majority are not in favor of increasing the per capita tax five cents a member this year as suggested, and he therefore recommends a per capita tax of forty cents for the ensuing year, or ten cents each quarter. Then adds this clause:

"Your attention is here called to the fact that twenty-five cents of the forty cents paid by subordinate councils must be sent to the national council, leaving but fifteen cents for state council purposes, or five-eighths of total per capita tax for national council and only three-eighths for state council. Furthermore, you will notice that it cost the national council sixty-six and two-thirds per cent. more to run that body than it does the state council of New Jersey. This is all wrong."

Now, the mode of levying the tax by the state council on this occasion (1898) was by adopting the whole of the section of the report which referred to per capita tax, in these words:

"Representative Stetser, of No. 21, moved that all between the words 'per capita tax,' on page 7, and the '*Law*,' on page 8, be adopted, which was agreed to;"

and the tax was levied accordingly.

It is shown, with sufficient distinctness in the part of the report so adopted, that fifteen cents was levied for the national council for its personal uses and ten cents for the national orphan home. So that I think counsel for complainant is justified in saying that of the money raised in the year 1898 twenty-five cents per head was expressly raised for the national council, and subjected to a corresponding trust. That money has all been paid, and is not in dispute here; and it should be borne in mind in this connection that these moneys, when collected, were not kept in a separate account.

Coming, now, to the year 1899: a like tax of twenty-five cents per head was levied in June of that year by the national council, and requisition for it transmitted to the several state councils. But at the meeting of the national council a dispute and difference arose, and a rebellion was threatened and partly precipitated on account of the increased expenses of the national council, and further and mainly because they proposed to introduce a life insurance feature, which many of the state councils declared was not within the scope of the original constitution or of the constitutions of the constituent bodies. In this it is quite plain they were right. And it was argued, and I think successfully, that the attempt to introduce that feature into the constitution of the national council failed by reason of lack of observance of the requisite formalities.

When the New Jersey state council met in October, 1899, their board of officers, in their report, introduced a section on the subject of the offensive conduct of the national council, and made a recommendation that they throw off the yoke of the national council, and embodied the same in certain propositions, as follows:

"1. That this state council refuse to accept or recognize in any manner the laws adopted by the national council at the Minneapolis session, or any other acts of said session.

"2. That the board of officers be instructed *to refuse to pay any per capita tax* whatever to the national council until it has rescinded its illegally adopted and objectionable laws. Furthermore, that we demand fair and full representation in the national council according to our membership and taxation.

"3. That the board of officers be instructed to engage legal counsel if in their judgment it is deemed best for the protection of our interest in the order, and to authorize the taking of such legal proceedings as may be necessary for the protection of the state council, each subordinate council and every member thereof, against any interference whatever by the national council or its officers."

Then follow the names of the officers, and the following:

"State council secretary moved that where there was no objection, that the state councilor should declare the report adopted; which was agreed to."

And, as before remarked, the bill sets out these resolutions, in connection with the refusal to make the regular annual report of that year, as showing a rebellion on the part of the defendant corporation.

Those resolutions were adopted at once, and were prior, in point of time, to the resolution levying the tax which is here in dispute.

That tax was levied by the following resolution:

"State council secretary Miers moved that the per capita tax for the ensuing year be the same as last year—forty cents per member, payable semi-annually; one-half in January, 1900, and balance in July, 1900; which was agreed to."

Counsel for complainant argued that the fact that the amount of the tax levied by the state council was precisely the same as it had been in the previous year, in connection with the language

used in adopting it—"the same as last year, forty cents per member"—has the effect of embodying in it the same details that were embodied in the resolutions fixing the tax for the year 1898, and that the moneys collected by it are thereby impressed with the same trust as those levied for the previous year.

Counsel for defendant contests that proposition, not only by pointing out the rebellious attitude of the defendant and the resolutions just quoted, by which the officers are instructed "to refuse to pay any per capita tax whatever to the national council until it has rescinded its illegally-adopted and objectionable laws," but also by showing the condition of its finances.

The constantly-increasing national tax had compelled the state council to borrow money to pay the national council the tax of 1898; and, by the financial report submitted at the same time— October, 1899—it appears that it was actually indebted for borrowed money to individuals and to some of the subordinate councils to the extent of $4,550. During the year ending October, 1899, it had received from per capita tax $11,410.60; from other incidentals a few hundred dollars, and from borrowed money, as I have said, $4,550.

An examination of the financial reports of the state council shows that its ordinary running expenses were between $8,000 and $9,000 a year; those for 1898 were $8,338.89, and for the year ending October, 1899, $10,118.79. For the year ending October, 1900, which would include the year in which the disputed tax was levied, the amount collected from the per capita tax was $12,532.80, which was increased by other miscellaneous items to $14,039.43. The expenses for that year are not given in detail in the report, but the treasurer claims credit for only $6,139.20 paid out. The difference between that and the previous years is accounted for, partly, by what I suppose to be the fact, namely, that no expenses were incurred in sending delegates to the national council. Those expenses appear to be considerable.

The counsel for defendant argues that, taking the whole situation—the rebellious attitude and resolutions, the state of the finances, clearly laid before the council; the plain necessity for a much larger levy than forty cents per head if the national tax

was to be paid, and the expense incurred of sending delegates to the national council and taking part in its deliberations—it rebuts any notion or presumption that the tax was levied for the purpose and with the view to the payment of the national tax.

Counsel for the complainant advances another position, which is that a trust is impressed upon this money by reason of individual members of the subordinate councils having paid their tax upon the supposition and for the purpose of having it paid to the national council. But the answer made by the counsel for the defendant is that the action of the state council, in October, 1899, was the action of the delegates sent to that council by the subordinate councils, and that these gentlemen acted in a representative capacity, and that their action was the action of the various subordinate councils and the individual members thereof.

Of course, the burden of proof is upon the complainant to establish the trust, and bearing that in mind, and considering the whole situation and circumstances, I think the complainant has failed to make out its case.

I am unable to find any solid ground for the contention that the tax of 1899 was intended to include, and did include, the national capitation tax.

Complainant, by its bill, also claimed the tax of 1900. This claim fails *a fortiori*. Not only had the rebellious attitude of the defendant not changed, but the complainant had, at its regular annual session in June, disciplined the defendant, and suspended its charter, and substantially expelled it from the national association. Then the total tax levied by the state council in October, 1900, was only twenty cents per head, and there is nothing in the language of the resolution imposing it which indicates, in the slightest degree, that any of it was raised for the national council; so that it is quite absurd to suppose that the tax imposed by the national council in June, 1900, was ever, either in whole or in part, levied and collected by the defendant.

I shall advise that the bill be dismissed.

In coming to this conclusion I have not found it necessary to consider the question dealt with by the chancellor on a preliminary motion. The case at that time had not assumed the aspect which it finally presented.