JOSEPH VILELLA ET AL. *v.* JAMES C. McGRATH ET AL.

ELMER DARN ET AL. *v.* JOSEPH McEVOY ET AL.

BROWN, JENNINGS, BALDWIN, INGLIS AND ALCORN, Js.

Argued February 7—decided May 23, 1950.

*David R. Lessler,* for the appellants (plaintiffs).

*Thomas R. Robinson,* with whom was *Chester T. Corse,* for the appellees (defendants).

JENNINGS, J. These and the two following cases involve substantially the same factual and legal issues. Complete opinions in each case would necessitate much repetition. The general situation will be stated in this opinion. Such issues in the other cases as are not determined by or differ from those herein will be discussed in the other cases. Abbreviations will be used extensively in a further effort to keep these opinions within reasonable bounds.[1]

Judge Cornell's comment on the facts in the *Bridgeport* case (15 Conn. Sup. 505, 511) is entirely justified: ". . . the cause could have been presented upon a stipulation of facts or, at least, on an agreed statement

---

[1] The following abbreviations will be used in these opinions: *Vilella* v. *McGrath, Vilella* case; *Darn* v. *McEvoy, Darn* case; *Chase Brass & Copper Workers Union* v. *Chase Brass & Copper Co., Chase* case; *Bridgeport Brass Workers Union* v. *Smith, Bridgeport* case. The unions involved will be designated as follows: International Union of Mine, Mill and Smelter Workers, International; Industrial Union of Marine and Shipbuilding Workers of America, Industrial; Congress of Industrial Organizations, C. I. O.; Provisional Metal Workers Council, P. M. C.; Local No. 565, Chase local; Local No. 251, Waterbury local. In the *Bridgeport* case two locals use the number 320. The local which claims that it had withdrawn from the International and joined the Industrial will be called the Smith faction. The local which claims that it was legally formed after the claimed withdrawal and joined the International will be called the Federico faction. N. L. R. B. stands for National Labor Relations Board.

with reservation to submit evidence limited to some phases of the matter which either of counsel might feel required particular illumination. As it was, many days were occupied with the presentation of evidence and the court has been obliged to read through and sift many hundreds of pages of testimony, by far the greater portion of which is pointless, repetitious and without value in aid of what finally emerges as questions of law." Our examination has included three records in addition to that in the *Bridgeport* case. Every effort has been made to reduce the discussion of the facts to bare essentials.

The undisputed general situation may be described as follows: Various individuals are named as additional parties to the suits, but the real parties in interest are the several union organizations hereinafter described. The C. I. O. is an over-all labor organization composed of international, national and industrial units. The so-called locals are, as their title indicates, comparatively small local unions affiliated, as far as the cases at bar are concerned, with one of the international, national or industrial groups. The interrelationship of these bodies is graphically illustrated by a chart in Rothenberg, Labor Relations, at page 38. All are unincorporated associations, as was admitted in oral argument. The relationship of a local to the group with which it is affiliated is contractual and is based on the constitution of the group and the charter and by-laws of the local. *National Circle* v. *Hines,* 88 Conn. 676, 681, 92 A. 401; Dangel & Shriber, Labor Unions, § 264; 7 C. J. S. 34, § 11b.

In 1946 and probably before, many of the locals affiliated with International became dissatisfied with its officers and management. At the election of officers of International in that year, the incumbents were declared elected. A minority report was submitted and

circulated among the locals which stated, in effect, that the count was fraudulent and that the contestants were elected. The merits of this controversy are not in issue. The matter was widely discussed among the locals of Bridgeport and the Naugatuck valley, particularly Waterbury. On January 26 or 27, 1947, special meetings of the membership were called by the executive boards for January 31. Personal notice was not given to all members of the locals. Because of the changing character of the membership and the absence of many in the armed forces, personal notice was probably impossible and certainly impracticable. The sufficiency of the notice is one of the principal points in issue. At the special meetings, the minority report was read and accepted, and it was voted to withdraw from International. In the *Bridgeport* case, there was a substantial minority against withdrawal, but in the other cases the affirmative vote was nearly but not quite unanimous.

On January 31, 1947, each local had several thousand members, substantial assets and a contract, now expired, with the employer of its members. All of the contracts provided for a checkoff of union dues. The amounts so retained by the employers were paid to financial secretaries of the locals at periodic intervals as provided in the contracts. The locals, in turn, paid dues to International. The cases under discussion are primarily concerned with the control of those dues and other assets.

Directly after the meetings of January 31, the locals delivered their charters and other personal property, as required by the constitution, to International. They thereupon affiliated, first, with the P. M. C. and, subsequently, with Industrial, both affiliated with the C. I. O. The purposes for which International and Industrial were organized were the same, as appears

from the exhibits. There was no change in the purposes for which the locals were organized or in their officers. They continued to operate as before. Neither International nor Industrial is composed of individual members but of affiliated locals. Further facts will appear in the discussion of the specific cases.

The charter granted by International provides: ". . . should the aforesaid Union withdraw . . . it shall pay all indebtedness for supplies, per capita, initiation or reinstatement stamps, also deliver its charter, together with all record books of the Union, to the International Union, and all moneys or other resources shall remain the property of the members of the aforesaid Union." All parties are agreed that this clause recognizes, at least by necessary implication, the right of a local to withdraw from International. There is nothing in the constitution or by-laws which controls the method of withdrawal, the kind or even the necessity of notice of a meeting held for that purpose or the number or percentage of affirmative votes required. In fact, most of the difficulties in these cases arise out of omissions from the underlying documents. See Frankfurter & Greene, Labor Injunction, p. 198. The constitution of International and the charter and by-laws of the locals are substantially identical in the cases under discussion.

Reasonable notice of the time, place and object of the special membership meetings of the locals was necessary in the absence of any specific requirement. *State ex rel. Rowland* v. *Seattle Baseball Assn.,* 61 Wash. 79, 82, 111 P. 1055; note, 167 A. L. R. 1233, 1235 et seq. Whether the notice is reasonable is a question of fact for the trier where the effect of various circumstances capable of diverse interpretations is involved. *Truslow & Fulle, Inc.* v. *Diamond Bottling Corporation,* 112 Conn. 181, 188, 151 A. 492. Personal

notice to each member of the local is not required. *Chase* v. *Tuttle,* 55 Conn. 455, 464, 12 A. 874. The notice sufficiently describes the object of the meeting if it states what is fairly intended, even though that be without technical nicety. *Bull* v. *Warren,* 36 Conn. 83, 85; *State ex rel. Johnson* v. *Atchison,* 105 Conn. 315, 324, 135 A. 456.

A principal question of law is whether a majority at a duly called meeting may withdraw from International in spite of the dissent of a minority. The peculiar character and form of a labor organization should be kept in mind in considering this question. It has little similarity to either religious or fraternal bodies where the purposes to which the assets of the local bodies are devoted are the purposes of the parent organizations. *Harker* v. *McKissock,* 1 N. J. Super. 510, 520, 62 A. 2d 405. This aspect, as well as the power to withdraw, is discussed at length in the *Harker* case and in *International Union* v. *Becherer,* 142 N. J. Eq. 561, 61 A. 2d 16. The conclusion is reached in the latter case (p. 567) that "The relationship between the international and its constituent local unions is that the local unions are the constituent units in a confederation comprising the international. That confederation is a voluntary one and any local union is free to withdraw from the alliance." In the two cases last cited, the majority voting to withdraw was large, but the principle must be the same wherever the vote is not unanimous. We are in full accord with the reasoning employed. Many cases are cited in International's brief, but they are all distinguishable from the cases at bar. In many of them, the constitution provides that there can be no withdrawal if a certain number of members, usually seven or ten, desire to retain their former affiliation. In others, the constitution requires that on withdrawal the property shall revert to the

national organization. It is a common provision of corporate charters that certain actions must have the approval of two-thirds or three-quarters of the stockholders. No such constitutional provisions appear in the cases under discussion. Still other cases are concerned with fraternal or church organizations. As is noted above, the difference between a militant labor organization, engaged in seeking the betterment of working conditions and an increased wage scale, and a fraternal insurance project is obvious.

It would serve no useful purpose to analyze all of these cases, but two, on which International particularly relies, will be briefly mentioned. In *Seslar* v. *Union Local 901*, 87 F. Sup. 447, 448, the local attempted to transfer all of its property to a newly formed corporation organized for the purpose of receiving it. It was held that this was an attempted diversion of the use of union property from the purposes stated in its own constitution and by-laws and that this could not be done. There was no such diversion in the cases at bar. In *Brown* v. *Hook*, 79 Cal. App. 2d 781, 180 P. 2d 982, the parent union and the local were closely integrated, the former had detailed supervision of the latter's affairs, and the constitution of the parent union contained no authority for withdrawal; on the contrary, it imposed severe penalties for secession. The cases are not even relevant. Some idea of the extent of interunion rivalry may be obtained by examining Galenson, Rival Unionism in the United States.

It is of some significance that the locals here involved may amend their by-laws by a simple, majority vote. Since the constitution permitted withdrawal, a by-law could have been enacted to permit it by majority vote. A majority vote was sufficient to effectuate a withdrawal. *World Trading Corporation* v. *Kolchin*, 166

Misc. 854, 2 N. Y. S. 2d 195; *Textile Workers Union* v. *Federal Labor Union,* 240 Ala. 239, 242, 198 So. 606; *Schweitzer* v. *Schneider,* 86 N. J. Eq. 88, 91, 97 A. 159; *International Union* v. *Becherer,* supra; *Harker* v. *McKissock,* supra; *Newark Rivet Works,* 9 N. L. R. B. 498, 510; note, 131 A. L. R. 902; 63 C. J. 698, § 78.

The final general legal issue concerns the control of the property in the possession of the locals after the attempted withdrawal. The only relevant charter provision is that previously quoted, to the effect that upon withdrawal "all moneys or other resources shall remain the property of the members of the aforesaid Union," that is, the withdrawing local. The decisive factor in determining this question is the character of the local. This character is defined in the quotation from *International Union* v. *Becherer,* supra, 567. The local is an autonomous, independent entity temporarily affiliated with the International. The relationship may be terminated at the will of either. The International may expel the local. The local may withdraw from the International. The affiliation of the local with the International is in no way necessary to the existence and operation of the local. There would be no International without the locals. *Grand Lodge* v. *Reba,* 97 Conn. 235, 238, 116 A. 235; *International Union* v. *Becherer,* supra, 567; *Harker* v. *McKissock,* supra, 522; *Shipwrights, Joiners & Calkers Assn.* v. *Mitchell,* 60 Wash. 529, 111 P. 780; Dangel & Shriber, Labor Unions, § 262; Rothenberg, Labor Relations, p. 32; 63 C. J. 698, § 78.

This is about as far as we can go in general statements of fact and law. The efforts to add to and strike from the finding have been elaborate and thorough, but Judge Cornell's statement, quoted above, is still true. There is no serious dispute about the basic facts on which the cases must be decided.

The plaintiffs in the *Vilella* case were the International and a member of the Chase local. The defendants were sued as former officers of the Chase local. This local was composed of employees of the Chase Brass and Copper Company in Waterbury. It was stipulated that the local was the real defendant and that judgment should be for or against it as such. The complaint claimed an injunction and declaratory judgment, the counterclaim an injunction and damages. Judgment was for the defendant local except that no damages were awarded and it was enjoined from using the numeral "565." This numeral had been used by International to designate a Waterbury local and it desired to retain it for that purpose.

The general discussion above suffices for the disposition of the *Vilella* case. It was essentially a contest for control of the assets and management of the local. The meeting of January 31 was duly called and its purpose was sufficiently stated. The adequacy of the notice was a question of fact. The notice was posted on the bulletin boards throughout the plant in the customary manner, and notice by mail and advertisement was also given. As noted in the general statement, actual notice to each member of the local was not only impracticable but unnecessary. See *Hubbard v. German Catholic Congregation,* 34 Iowa 31, 34; note, 167 A. L. R. 1235-1237. The conclusion of the trial court that the notice was adequate cannot be disturbed. The withdrawal over the dissent of a minority of four in a membership of about 3000 was within the charter powers of the local. It continued to exist thereafter as an autonomous voluntary association still affiliated with the C. I. O., first through the P. M. C. and now through Industrial.

Costs were properly taxed to the defendants. This was an equitable action, and the defendants prevailed

on all issues of substance. .Costs under these circumstances are within the discretion of the court. *Markham* v. *Smith,* 119 Conn. 355, 367, 176 A. 880; see General Statutes, § 3602, which expressly confers discretion in equitable actions. There is no error in the *Vilella* case.

The *Darn* case differs from the *Vilella* case in that the Waterbury local which was the real defendant was an amalgamated local consisting of units from thirteen different plants in and around Waterbury. It had over 4000 active members. The two cases were tried together. The plaintiffs' brief analyzes the similarities and differences claimed to exist in the two cases, but none appear to require separate discussion. The vote to withdraw in the *Darn* case was 1400 to 24. A judgment similar to that in the *Vilella* case was rendered. The defendants prevailed except, as in the *Vilella* case, as to the right to use their former numeral "251" to designate the local. There is no error in the *Darn* case.

There is no error in either case.

In this opinion the other judges concurred.